Good morning everybody. You're all going to have to bear with me a little bit. I had dental surgery a few weeks ago so my jaw is wired shut but I can at least mumble. If you don't understand me just ask me to repeat myself. Mr. Jay when you're ready. Thank you your honor. May I please record William Jay for the appellant personalized media communications. The district court in this case granted judgment on the pleadings and invalidated all 58 claims in suit across seven patents in a very short opinion. In my limited time this morning rather than try and get to each and every one of those seven patents I'd like to focus in particular on the 304 and the 252 and to use those to illustrate some of the errors in the district court's analysis. We think those errors are brought out particularly by several recent decisions in this court that both state the district court's decision. I want to emphasize three points this morning. First the district court proceeded at such a high level of generality that it fundamentally misunderstood what the patents are directed to. It missed the significance of each of the ordered combinations and it ignored how really narrow some of those combinations are. Second these patents literally are from a different era. They have priority dates going back to 1987 or in some cases 1981 and understanding what is routine or conventional in the art has to take account of what time period the patents were submitted to the patent office during. The district court's analysis gave short shrift to that and in particular in the context of a judgment on the pleadings the district court erred because deciding what's inventive in 30 or 35 years ago has to rest at least in part on understanding of facts of historical facts rather than just as a pure question of law and while we're not suggesting that the district court... Can you just get to the specifics particularly on the 304 because I find that the most difficult one. I mean you're not inventing digital transmission or anything like that. It's about encryption and two-step encryption, right? It's not about, respectfully, it's not about two-step decryption because we're not claiming to have invented two-step encryption. We're claiming a method of key distribution that certainly does rest on decryption but as the court said in Enfish, directed to an abstract idea doesn't mean that it involves an abstract idea somewhere. So you're claiming the transmission of the key over the digital lines? So there's a two-part transmission and it is the embedding the key to decode the but in the penultimate step of the claim, you'll see that the control signal must be used to decrypt. The decryption of the second part must be based on the control signal which is the first decrypted part. Why isn't this just a patent on sending two types of information over a digital over the whatever the transmission means might be? Because it requires that the decryption of the second has to rest on you know has to be based on something encoded in the first so you have the decryptor at the ultimate destination. So there's two decryptors basically you have somebody's gotten a first key some other way and then you get this other package which has a new key and the old stuff will encode the key which will then encode the information. That's right and by having this second you know this that second step you know the second key which doesn't rest hardwired at the station but is transmitted dynamically with the programming that gives the controller of the of the network more ability to number one do station specific customization so in other words to send out. Where is that disclosed? Where is the advantages of this claim to invention disclosed in your specification? I think the best places to look at the very beginning of column 148 which is the beginning of sorry the beginning of example 7 in helpful in column 5 and this obviously is a very long specification it covers many more than just just one pattern but in column 5 it explains. Is that exactly in the appendix? Sure so column 5 these are in the addendum to our blue brief or in the appendix volume 308. Yeah yes column 5 is 308 and so this discusses the limitations of the prior art right it has no capacity for identifying. What column and line number are you looking at? I'm looking at column 5 and the limitations in the prior art begin at line 38 and in particular I guess halfway through that paragraph beginning at line 46 the capacity for automatically identifying decryption keys and inputting them to a decryptor to serve as a key for a step of the decryption and then the last the the next sentence the next sentence but one no capacity for decrypting a transmission then embedding a signal in the transmission and have it but where does it say why that's helpful or whether that's a technological improvement or anything like that and I should have I should have gone here first so this is A379 column 148 the beginnings of example 7 the capacity to compute cessation specific information at each subscriber station and then the system of regulating means and methods so what this what this is referring to and it comes back to this several times throughout I just don't understand how this is something that is novel or new and could have been done before by other conventional means I mean couldn't you have had during world war ii and maybe you did you know every individual intelligence station they had their own specific encryption key and when somebody sent a message an encrypted message over the wireless or whatever they were using they would send a code and a message so that they would have a station specific code that was the start of the message and then the encrypted message was the second part and they would use their code to encode the new key to get to the message it seems very likely to me that that's been done for and all you're doing is putting it on digital transmission well but putting it in digital in digital transmission has particular advantages in the network context because you can with a single signal send a single a single transmission across the network that will be decrypted differently in other words you'll be received differently by multiple stations and decrypted differently so you know for example if it says to look uh look in your read-only memory at a location for the relevant code that may have one effect at a subscriber station that has certain access privileges and it may have a different effect at a subscriber station that can decrypt more or less all of that can be done with a single signal without having to send one signal to station number one then another signal to station number two each time repeating the entire encoded transmission so you that you're saying that's disclosed in column 148 well example example 7 goes through a number of a number of these things and i think that the the advantages are first listed right there at the beginning of example 7 right the ability to the capacity to compute station specific information and i'm trying i'm trying to unpack that uh a little bit what advantage does station specific information have uh and can you point to any place in the let me let me answer that in two ways well first in the uh what the district court missed right was the was the step itself that i've been discussing that it has the description has to be based on the signal encoded in the first one but second there are other aspects of the you know for example the dependent claims uh that uh for example claim 16 uh each station can store information uh recording how it how it decrypted the programming that and this is referred to in the specification i don't have the column number right to hand for this but it is in example seven it explains six or seven it explains that having subscribe station specific information allows you once if you find a pirated transmission there's one cover at which station it was that was sent out so in other words it allows for you know tracking and uh tracking and billing customization that's the second of the advantages referred to in column 148 and then you know there are in the other independent claims in in the 304 patent uh go to even more specific ways of doing this encoding ways that could not have been done you know just with you know a one-time pad or a codebook cipher during world war ii you know so for example you know using timing or location you know of the signal itself as the basis for for the first code that is then used to decrypt the second code i think you're in your argument you make a step two analysis you seem to be relying on step two and saying that this is a improvement for this particular type of system as compared to other types of systems yes yeah i think that's what we're talking about right right i mean well i mean this is addressed i think in the uh in the declaration that this is an improved in the weaver declaration uh that the district court allowed us to file and that but then didn't consider at page 4059 that this addresses the problem of securely distributing the keys that that why is that unique to this particular programming network as opposed to other kinds of networks well this doesn't claim a particular kind of programming network it claims a particular kind of signal sent over sent over the network so i guess what i'm getting at is if cases like vdr are talking about a technological improvement for a particular system how is the method that you've got here with double decryption in particular beneficial for your system versus other kinds of systems whether it be judge hughes's example of world war ii technology or other kinds of technology i think that the example uh that the advantages really come in the networked context versus other contexts that it basically uh it allows customization of a single code sent to multiple receiver stations to have multiple different effects at different receiver stations in the decryption of the programming that's then sent with a single transmission and i think to to answer kind of the same question with respect to the 252 patent uh which which dealt with upgrading software as upgrading operating systems by first comparing the hardware version at each receiver station again it's the same idea a single signal sent across the entire network can have the desired effect by being received by multiple stations and having the desired effect at the ones where it should and not at the ones where it shouldn't without having to send individual transmissions to each station directing each one to update or not update uh as the case might be uh i see i'm into my rebuttal time but i'd like to make sure i've answered your questions at this point thank you you may please report good morning i think the argument exposed exactly the problem the magic and the claims apparently is in the signal itself or in the information sent or in the instructions that are sent so no matter which patent you look at why isn't sorry why isn't the technological advantage what your friend was just saying that before digital transmissions if you wanted to do this two-step encryption method any other way you'd have to send separate messages and that this new system and this new patented invention allows you to send out one signal broadcast to maybe i know it's probably not in the claims maybe hundreds and thousands of subscribers and with one thing you can get a bunch of different encrypted messages right it's not on the claims i'll go with the analogy i think we gave some good analogies to the district court and the district court liked the analogies and incorporated them into the opinion it's very easy to send the message and the encryption key as they call it the key's not on the claim either but it's very easy to send that all at once if i sent you an envelope with the message inside the envelope and an encryption on the outside of the envelope and how to open the envelope i sent both the message and the encryption in a single message so doing it once doing it simultaneously the district court magic and just simply saying i'm doing it digitally while all computer functions are digitally so saying do it on a computer is doing it digitally and obviously doing it on a computer under alice does not make an invention the district court fully understood this and the oral argument was extensive on each of these patents the argument was well over an hour you say that the claim doesn't have the key in it is that because the claim is directed to control information which is pretty broad yes and in fact i want to get to the claim construction i think when i look at the claims they do rely on these claim constructions and on the 252 and the 304 are the two patents the only two patents where they say the claim construction mattered well they never explained to the district court how the claim construction mattered the district court adopted the claim construction the district court quoted from the claim constructions there's no basis to say the appendix at 39 35 their claim constructions are very very broad and let's look at what a control signal is and they have a definition control sickness at the bottom of 39 35 which the district court asked them to give the district court gave pmc every benefit of the doubt and of course considered the weaver declaration of course considered all the arguments that pmc could make and accepted these claim constructions even after the oral argument and look at the definition of control signal it means a signal that carries information or data that affects controls or enables processing i don't think you could get broader than that i don't see how sending a signal that affects processing could be any broader um you said that uh the judge considered the weaver declaration is that because he never said that he didn't consider it and what is your basis for saying he considered it i have much more than that yes that's a great question first of all when he accepted the weaver declaration he accepted it by name he said please file the weaver declaration and that's in his order that's a joint appendix 4924 and he said file your supplemental brief together with the affidavit of dr alfred c weaver exhibit b to the motion that was refiled in the docket as docket number 135 the supplemental brief was filed as docket number 134 but if we go to the district opinion the district court opinion and the reason why i know all the weaver arguments were considered before the district court they did not argue step two they had nothing on inventive concept if you read the oral argument for the district court the lawyer for pmc never once said inventive concept their entire argument was it's not abstract and preemption they did not argue step two only after the oral argument did they say let's submit weaver and they submitted a supplemental brief which repeated the weaver arguments and if you go to the district court opinion the district court opinion repeatedly cites the supplemental brief which incorporated all the weaver arguments for example if we go to the first patent is the 243 patent in the district court opinion at a8 middle paragraph it begins plaintiff also argues supplies and inventive concept the district court cites di 134 at page 17 unfortunately the entire supplemental brief is not on the joint appendix but there's there's enough in the joint appendix to show you that the supplemental brief cites to weaver virtually every other sentence cites the weaver weaver weaver the district court cites page 17 that brief that page is the novelty arguments made by weaver the trouble with weaver is it's not relevant weaver is not a relevant declaration he didn't do a step one step two analysis all he said was this claim is novel because broadcast tv didn't do it that way the district court understood the irrelevance of these arguments but look at the opinion of the district court it cites id the next sentence the next arguments if you go to the next page at a9 of the district court opinion he even says that the method was new means of transmitting is not relevant he's accepting their arguments of weaver and saying even if weaver is correct that it's new is not relevant here and he continues and on each of the patents i can show you more and more citations to the supplemental brief which incorporated all the weaver arguments the point is on a motion to dismiss or judgment on you're free to make any argument you want if it's reasonable common sense can be inferred by the district court judge whether it's in the brief or the declaration doesn't matter what's wrong with the the gray brief is they assume that weaver raised controverted facts that there's a genuine issue of material fact that's not true we're not opposing what weaver says neither was the district the point is what weaver said wasn't legally relevant it's not legally relevant because there was no analysis of what was abstract a matter of fact weaver doesn't even acknowledge anything is abstract let me just give you a general question which is what do you think the role is of conventional and conventionality in a one-on-one analysis that's a great question too um weaver redefines what's conventional he uses conventional as if it means the primary or most prevalent way well that's not what conventional means at all and in fact this court just came out with an opinion last week in the amaranth case conventional means that it's in the prior art it was known and we know all this is conventional and known because all these claims have been rejected by the way on iprs based on the prior art so we noticed that it was related cases related appeals there's a district court didn't rely on that at all oh no that'll happen after the district court decision the district court reached its decision on its own was not influenced by any iprs the iprs occurred after the district court decision and while briefing uh was taking place or or those decisions not final they are um in the patent office do you mean i mean are they going to feel here uh some are on appeal some have three or four have been denied on rehearing three are still pending rehearing in the patent office we have delayed all the briefing in those appeals pending the outcome here and that's what's been happening in those cases but your position here as i understand it is whether things are conventional or not there's an abstract idea here in the district court getting here and finding that and moreover there's no technological improvement of the type that you'd find in ddr or something like that correct your questions on the specification are key if you look at ddr bascom even intellectual ventures if you look at some of these cases you'll notice this court very carefully adheres to the specification of the claims in deciding whether or not there is a technological context or technological improvement here there is no citation to the specification showing any advance over the art and they cannot show anything in the specification because the claims aren't that specific the claims cover all technological contexts if it's a network they believe that's the field that's what was the significance of their complaint the complaint calls all these inventions platform agnostic they don't want them to be tied to a technological field and if you look at the complaint which we assumed is true they basically said amazon in paragraph nine of the complaint which is in your joint appendix volume three all the procedural matters in this case are in volume three of the joint appendix they make it very clear if amazon does it it infringes and that's paragraph nine on 1453 of the joint appendix they basically explain what amazon does they say amazon sells retailers we and paragraph nine and they say the aforementioned systems methods services products are collectively referred to here in as the amazon accused products there's no way they can seriously on a rule 12 motion act as if these claims are narrow and specific they're not they're alleged to be broad and not technologically specific that's the whole point these claims claim a functional result with nothing specific on how to do it this court has several cases explaining this in fact we did 28j letters there were seven 28j letters in this case i've never seen seven 28j letters but you'll notice there was no response to my 28j letter on the two affinity labs cases and one of those affinity lab cases was against amazon we've already established the legal propositions that i need today to show that claiming functional results at 50 000 feet is abstract the true even layman definition of a they purposely abstracted the claims to cover technology that might exist someday and they nothing in the claims or the specification giving anything technological to teach anybody how to do anything and that's why there are numerous examples analogies that would apply to all these claims to show that these problems pre-existed computers they're not specific to computers they cover all economic practices we say they cover economic practices their responses oh no they cover much more than that this is a validity case and they're talking about the breadth of the claims in the reply brief that they cover economic practices and more which to me is nothing short of really the very four or five pages of the reply brief they admit the claims are so broad that of course they cover economic practices the judge didn't decide it on the basis of economic practices right oh he thought it was they were broader for example he contrasted the claims with ultra ultra commercial was a great case talking about enticing someone to listen to an advertisement to get additional material he says these claims are broader because under the claim construction and he quotes the claim construction this programming is much more than advertisements it's beyond economic it's more than economic these claims are so broad anybody who uses the internet infringes some of these claims period they essentially conceded that before the district court and they were unable to explain to the district court how anyone can use the internet press that shopping cart you infringe and that's why this is a very serious case as far as amazon is concerned these this is the worst scenario for the patent system as far as we're concerned and if there's no further questions i dedicate the rest of my time to the court thank you thank you just just a few points in rebuttal i want to pick up in particular on uh judge stoltz question about what is conventional and what my friend says is that conventional just means it's in the prior art now this court has been very clear that the 101 analysis is not the same thing as the anticipation or obviousness analysis and i think my friends uh alluding to the ipr is really just makes my point we would love the chance to litigate on the facts the questions of anticipation and the comparisons to the prior art that would underlie an obviousness analysis but what my friends have persuaded the district court to do is to use the you know much blunder instrument of 101 to invalidate all of these across the board now what's conventional in a 101 case is not just synonymous with it is somewhere in the prior let me ask you this what is the role of conventionality regardless of what it means what is its role in 101 case its role in the second step is to distinguish between innovations that aren't that aren't really innovative uh that don't play the that don't add the something more the supreme court has been talking about in its 101 cases so what about what he argues that you never argued step two below well you know he agreed that the district court allowed us to file a supplemental brief and there's a sub you know i don't think that he can argue waiver and at this uh and at the same time point out that one the district court allowed us to file a supplemental brief to the district court decided and three say that it's all a question of law anyway uh so we certainly have argued step two to this court and we're arguing that uh these claims rest on to the extent that they're directed to an abstract idea at all they they contain a sufficient degree of inventive step that they are something more and the question is now is that something more doesn't count does that something more not count because it was simply routine or conventional in the art and i think the fact that the court has been careful to say routine and conventional routine or conventional uh explains why just saying that it existed somewhere in the prior art is not a correct definition of what of so for example you know uh going back to the weaver declaration but this is this is stated in the specification as well but at 4060 dr weaver says that remote reprogramming which is the uh you know what the 252 patent is directed to was anything but conventional at the time uh because it was done it could be done you know by individuals walking up to a computer with a floppy disk but doing it remotely over an entire network with a single signal that would then and so even if the idea of reprogramming is an abstract idea this type of remote reprogramming you know done in a specific way that involves comparing a particular um piece of data that that indicates the hardware version and also indicates the operating system version that's what's inventive i do want to talk about the 304 patents that's the 252 patent on the 304 patent i want to make sure if i may with the court's adult indulge you can finish briefly thank you very much uh your honor had asked me uh about the uh uh what's inventive about the 304 and i didn't have the column reference uh to hand at column 157 line 57 there's some more discussion of the point that i was making about why it's useful to have subscriber station specific decryption uh involved in the in the process i mean ultimately uh you know my friends say that you know these are platform agnostic and that therefore they must be super super broad now if if we were making a field of use limitation argument my friend would be up here saying that doesn't count in the 101 analysis what the reason that these claims are not directed to an abstract idea and that even if they were they would survive at step two is that they rest on a narrow application with and a specific uh for in the 304 patent a specific construct that requires the transmission to be structured in a very particular way now if we adding or subtracting a field of use limitation is not what matters for 101 what matters is that this is not broadly preemptive because of how the claims are structured that and it's structured in a way that solves a network problem was not routine or conventional at the time and and doesn't have a broad preemptive suite thank you